**SEI Corp. v. Shearson Lehman Brothers Inc.**

*Mark L. Alderman,* for plaintiffs.
*John J. Murphy III,* for defendants.

GAVIN, *J.,* January 20, 1993—

## BACKGROUND

One of the truly marvelous byproducts of being a judge is the exposure one has to fascinating cases such as this.

My exposure to banking, stock funds, etc. is that of the ordinary citizen. I always seem to be taking more out of the bank than I put in and I only dream of stock portfolios and market movements. However, this case introduced me to the world of proprietary and institutional funds. A proprietary fund is one wherein the bank acts as the financial adviser. In an institutional fund a third party acts as the financial adviser. The parties to this action consider themselves major players in this market and together handle accounts worth billions of dollars. Although neither named party is necessarily a household word, they are both well known within the financial community and arguably defendant Shearson Lehman has a more visible profile by virtue of its national presence and size. Both parties provide investment guidance, processing services and control of various mutual funds through which clients' funds are filtered.

An overview of how this business runs is important to an understanding of my decision. Banks obviously are depositories of money which they invest and reinvest for the benefit of their clients and for the bank's own benefit. Due to federal and state regulations, the banks are limited as to how and where certain investments can be made. Funds can be invested short-term, mid-term,

long-term or whatever. The banks also hold trust funds for estates which they manage and it is the trust business that is particularly appealing to the parties to this proceeding. Obviously the bank receives a fee for managing the trust assets and if the bank can likewise receive a fee for providing advisory and administrative services to the fund wherein the trust assets are invested the bank's fee is enhanced.

Plaintiff is a newcomer to the proprietary-institutional fund market having set out several years ago to invent the better mousetrap. Messrs. Wagner and Dolen of plaintiff SEI testified that they wanted to position SEI in this market in such a manner that their services would be required by the banking industry irrespective of whether the bank was utilizing proprietary or institutional funds. To that end, they developed a complete package to market to the banking industry that involved SEI in the investment of the bank's funds whether the bank chose to do it through a proprietary fund or an institutional fund. Obviously, plaintiff was very successful having gone from zero assets under management to $15 billion under management in three years time.

Defendant Shearson Lehman was in the proprietary-institutional fund marketplace long before plaintiff and has a much more dominant position. Indeed, defendant maintains separate sales organizations for the proprietary and the institutional funds whereas plaintiff markets both funds through one sales force. Defendant asserts that its dual sales force insulates it from the harm plaintiff envisions occurring if Miss Cregg is permitted to work for defendant.

Joanne Cregg commenced her employment with plaintiff in January of 1990 at which time she had no sales or administrative experience with mutual funds. What she did have was a quick mind, a strong work ethic and

the desire to be successful. True to the American dream, she was successful perhaps beyond her wildest imagination. Unfortunately, company politics at SEI interfered with her desire to advance into a sales position and she therefore sought employment with defendant. Miss Cregg had obvious appeal to defendant in that she was a key player in the development of plaintiff's strategy for making itself a major player in the proprietary-institutional fund business. Her prime responsibility outside SEI's corporate offices was the Banc One account, which happens to be plaintiff's single largest client. This client produces income to plaintiff of $12 million per year. Coincidentally, if Miss Cregg is permitted to work for defendant she will be in a position of soliciting the Banc One account. Having had the opportunity to observe Miss Cregg I would be most concerned about her as a competitor if I were plaintiff. She is an outstanding individual whose loss plaintiff will long rue. However, the catch to this situation is that Miss Cregg entered into a restrictive employment covenant with SEI which it obviously wishes to enforce.

## DISCUSSION

The law concerning the grant of preliminary injunctions is well known and need not be stated herein. The law regarding covenants not to compete is likewise well known and need not be stated. The court well knows that restrictive covenants of any type, especially employment, are not favored by the law. However, the court is also cognizant that consenting adults may, as part of the employment process, bargain away their right to compete if the necessary standards are met. Upon reviewing the document marked Deposition Exhibit no. 8, entitled SEI Corporation Employee Non-Disclosure and Non-Compete Agreement, I find that it is reasonable in terms of length and limitation of activities. It is important to keep in

mind that Mr. Dolen of SEI described the current market as one similar to the gold rush situation of the Old West. Certainly, the fact that SEI went from zero business to $15 billion in three years is indicative of the gold rush nature of this business. Although Miss Cregg is arguably being hired to work in the institutional arm of Shearson Lehman, she is nonetheless in competition with plaintiff which also is in the institutional fund business, although to a lesser extent than it is involved in the proprietary fund business.

Defendant argues that plaintiff has its personnel firmly entrenched with Banc One and that Ms. Cregg certainly does not pose a threat to that account. However, plaintiff's employee, Mr. Ugebee, holds the very position with Banc One that Miss Cregg desired. He was given it in preference to her. If I were Mr. Ugebee I'd be looking over my shoulder. Further, defendant has other areas nationally where Miss Cregg's considerable talents can be utilized without posing a threat to plaintiff and without violating the terms of the restrictive covenant. Accordingly, I find as a fact that the covenant is reasonable and that on the law plaintiff will ultimately prevail. I further find as a fact that to permit Miss Cregg to be in a position to solicit plaintiff's accounts, some of which she personally handled, would pose immediate and irreparable harm to the plaintiff. I further find that plaintiff has no adequate remedy at law.

Based on the foregoing background and discussion I enter the following

## ORDER

And now, December 18, 1992, upon consideration of plaintiff's motion for preliminary or special injunction it is hereby ordered and decreed that for a period of two years, after termination of employment, defendant,

Joanne Cregg, will not be employed or connected in any manner with any business which competes with the business of SEI as conducted on the date that defendant's employment terminated.

Further, defendant Joanne Cregg is not precluded from employment by a business where her responsibilities and activities relate solely to a line of business that is not competitive with SEI.

Further, the covenant not to compete will apply only to the geographic areas in which SEI maintained operations or provided products and services to customers as of the date defendant's employment terminated.

## ORDER

And now, January 20, 1993, upon consideration of plaintiff's motion for preliminary or special injunction, and upon consideration of defendants' motion for reconsideration and to vacate order and to dissolve preliminary injunction, and all responses thereto, it is hereby ordered and decreed as follows:

(1) Defendants' motion for reconsideration and to vacate order and to dissolve preliminary injunction is granted in part;

(2) This court's order dated December 18, 1992, is vacated and the preliminary injunction entered thereby is dissolved;

(3) Defendants' motion for reconsideration and to vacate order and to dissolve preliminary injunction is denied in all other respects;

(4) Plaintiff's motion for preliminary or special injunction is granted;

(5) A preliminary injunction shall issue upon the entering of security by plaintiff as follows:

"Plaintiff shall post security in the amount of $300,000 as a condition of the preliminary injunction. The $300,000 shall be invested in shares of the SEI-Tax Exempt Trust-Institutional Tax Free Portfolio (the 'fund'), for the account and in the name of the prothonotary Court of Common Pleas, Chester County, Commonwealth of Pennsylvania (the 'security'). All dividends and capital gains shall be automatically reinvested in additional shares of the fund. Plaintiff shall, from time to time, purchase such additional shares of the fund as is necessary to maintain the security at a minimum value of $300,000. There shall be no modification of, or withdrawal from, the security without application to and approval by the court or agreement of counsel for all of the parties. Upon application to and approval by the court, or upon the agreement of counsel for all of the parties, plaintiffs may substitute for the security a bond in like amount."

(6) Upon the entry of said security, the following preliminary injunction shall become effective:

"For a period of two years after termination of employment defendant, Joanne Cregg, will not be employed or connected in any manner with any business which competes with the business of SEI as conducted on the date that defendant's employment terminated.

"Further, defendant Joanne Cregg is not precluded from employment by a business where her responsibilities and activities relate solely to a line of business that is not competitive with SEI.

"Further, the covenant not to compete will apply only to the geographic areas in which SEI maintained operations or provided products and services to customers as of the date defendant's employment terminated."